**TAXATION WITH REPRESENTATION FUND, Plaintiff,**

v.

**INTERNAL REVENUE SERVICE, Defendant.**

**Civ. A. No. 78–2304.**

United States District Court, District of Columbia.

Jan. 22, 1980.

William A. Dobrovir, Washington, D.C., for plaintiff.

John J. McCarthy, Donald J. Gavin, Michael J. Salem, Tax Division, Dept. of Justice, Washington, D.C., for defendant.

## MEMORANDUM OPINION

CHARLES R. RICHEY, District Judge.

The complaint in this action was filed by the Taxation With Representation Fund under the Freedom of Information Act, 5 U.S.C. § 552, for access to records of the defendant Internal Revenue Service [hereinafter, "IRS"]. The records the plaintiff seeks are IRS General Counsel's Memoranda [hereinafter, "GCM's"], IRS Technical Memoranda [hereinafter, "TM's"], and IRS Actions on Decisions [hereinafter, "AOD's"], issued after July 4, 1967,[1] and IRS indices to these records. The plaintiff has exhausted its administrative remedies,

---

1. July 4, 1967 is the effective date of the 1967 amendment to the Act. *See* Pub.L. 93–502, § 4.

and the Court has jurisdiction of this action pursuant to 5 U.S.C. § 552(a)(4)(B).

## I.  THE STATUTORY FRAMEWORK

Cases such as this one in which a party seeks what arguably can be called systems of interpretative law involve the interplay between three subsections of the Freedom of Information Act.  First, there is section 552(a)(2) [2] which requires each federal agency to make certain information available to the public.  Furthermore, section 552(a)(2) requires the agency to maintain indices and make them available to the public.  Thus, if records qualify under section 552(a)(2), not only are they subject to mandatory disclosure, the agency must create an indexing system and make that system available to the public.

As opposed to the limited language of section 552(a)(2), section 552(a)(3) [3] is virtually all inclusive.  This latter section requires agencies to promptly make available all reasonably described records which have been requested pursuant to the procedures set down by the agency.  There is no requirement in section 552(a)(3) for the agency to create indices as there is under section 552(a)(2).

Finally, section 552(b) sets out nine exemptions from mandatory disclosure under the Act.  Therefore, if records are encompassed within sections 552(a)(2) or (3), they are exempt from disclosure if described in section 552(b)(1) through (9).  *See National Labor Relations Board v. Sears, Roebuck & Co.,* 421 U.S 132, 154 n.21, 95 S.Ct. 1504, 1518, 44 L.Ed.2d 29 (1975).

In this case, all the parties agree that indices are already in existence with respect to the records at issue.  Thus, the plaintiff need not invoke the authority of section 552(a)(2) to force the defendant to create indices.  It is clear that all of the requested records as well as the indices to these records constitute records within the meaning of section 552(a)(3).  Accordingly, there is no need to examine the question whether the records at issue fall within section 552(a)(2).  Instead, this case turns on whether the records are exempt from mandatory disclosure under section 552(b).

## II.  GCM'S, AOD'S, AND TM'S ARE NOT EXEMPT FROM DISCLOSURE BY THE DELIBERATIVE PROCESS PRIVILEGE.

The defendant contends that the records at issue in this case are exempt from disclosure pursuant to exemption (5) of the Freedom of Information Act which protects "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."  It has long been recognized that exemption (5) "was created to protect the deliberative process of the government, by ensuring that persons in an advisory role would be able to express their opinions freely to agency decision-makers without fear of publicity."  *Ryan v. Department of Justice,* 199 U.S. App.D.C. ——, at ——, 617 F.2d 781 at 789 (D.C.Cir., 1980).  Oftentimes, exemption (5) cases turn on whether the government action at issue is final.  Exemption (5) does not apply to final actions of agencies.  Thus, statements of policy and final opinions which have the force of law or which explain actions an agency has already taken

---

**2.**  (2) Each agency, in accordance with published rules, shall make available for public inspection and copying—

  (A) final opinions, including concurring and dissenting opinions, as well as orders, made in the adjudication of cases;

  (B) those statements of policy and interpretations which have been adopted by the agency and are not published in the Federal Register; and

  (C) *administrative staff manuals and instructions to staff that affect a member of the public;* [and]

. . . also . . . *indexes [to such material].*

**3.**  (3) Except with respect to the records made available under paragraphs (1) and (2) of this subsection, each agency, upon any request for records which (A) reasonably describes such records and (B) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, shall make the records promptly available to any person.

are not within the scope of exemption (5). *Ryan v. Department of Justice, supra* at 199 U.S.App.D.C. at ——, 617 F.2d at 790.

The most important case on this issue is *National Labor Relations Board v. Sears, Roebuck & Co., supra.* In the *Sears* case, the company sought certain memoranda known as "Advice Memoranda" and "Appeals Memoranda," and related documents, generated by the Office of the General Counsel in the course of deciding whether or not to permit the filing with the National Labor Relations Board [hereinafter, "the Board"] of unfair labor practice complaints. *Id.* 421 U.S. at 135–36, 95 S.Ct. at 1509. The Court noted that "[c]rucial to the decision of this case is an understanding of the function of the documents in issue in the context of the administrative process which generated them." *Id.* at 138, 95, S.Ct. at 1510. The memoranda in issue in the *Sears* case pertained to the General Counsel's decision whether a unfair labor practice complaint would issue. *Id.* If the General Counsel decided to issue a complaint, adjudication then occurs before the Board, and the General Counsel becomes an advocate in support of the complaint before the Board. *Id.* at 138–39, 95 S.Ct. at 1510–1511. If the General Counsel decides not to issue a complaint, the statutory scheme completely precludes any proceeding before the Board. *Id.* at 139, 95 S.Ct. at 1511. The Supreme Court held that Advice and Appeals Memoranda which explain decisions by the General Counsel not to file complaints are "final opinions" made in the adjudication of cases and fall outside the scope of exemption (5), but that Advice and Appeal Memoranda which explain decisions by the General Counsel to file complaints and commence litigation before the Board are not "final opinions" made in the adjudication of cases and fall within the scope of exemption (5). *Id.* at 148, 95 S.Ct. at 1515.

The Court in *Sears* points out that the timing of the communications received by the decision-maker is crucial. Communications received by the decision-maker prior to the time the decision is made are protected because damage to the quality of the agency's decisions will result, and the public has little interest in communications which have not been accepted by the agency. *Id.* at 151–53, 95 S.Ct. at 1516–1517. On the other hand, communications made after the decision is made by the agency and which are designed to explain it have little effect on the decision-making process and high public interest. *Id.* at 152, 95 S.Ct. at 1517. However, the Court noted that the public is "vitally concerned with the reasons which did supply the basis for an agency policy actually adopted" *id.,* and these reasons constitute the "working law" of the agency which is not protected by exemption (5). *Id.* at 162–63, 1522–1523. The Court indicated that there is embodied in the Act a strong congressional aversion to secret agency law and an affirmative congressional purpose to require disclosure of documents which have the force and effect of law. *Id.* at 153, 95 S.Ct. at 1517. Accordingly, pursuant to the Supreme Court's decision in the *Sears* case, the task before the Court is to determine whether GCM's, AOD's, and TM's contain the reasons behind policy actually adopted by the IRS.

## A. GCM'S

In support of the defendant's motion for summary judgment with respect to GCM's, the affidavit of Jerome D. Sebastian, the Director of the Interpretative Division, Office of Chief Counsel, of the Internal Revenue Service was filed. According to this affidavit, GCM's are legal memoranda from the Office of Chief Counsel to the Internal Revenue Service prepared in response to a formal request for legal advice from the Assistant Commissioner (Technical). Mr. Sebastian states in his affidavit that GCM's are primarily prepared by attorneys in the Interpretative Division of the Office of Chief Counsel and usually addressed to the Office of the Assistant Commissioner (Technical) in connection with the review of proposed private letter rulings, proposed technical advice memoranda, and proposed revenue rulings of the IRS. According to Mr. Sebastian, the GCM's set forth the issues presented by whichever of these proposed determinations is under re-

view, the conclusions reached and a brief factual summary. The body of the GCM's, according to Mr. Sebastian, contains a lengthy legal analysis of the substantive issues, and the recommendations and opinions of the Office of Chief Counsel. The Sebastian affidavit states that GCM's are often accompanied by a draft of the proposed determination that reflects the changes and modifications recommended in the GCM. According to this affidavit, GCM's are maintained by the Office of Chief Counsel and frequently cited in subsequent GCM's to insure consistency, avoid duplication of research, provide a reference source, and update earlier memoranda when a position on an issue is sustained, modified, or changed within the Office of Chief Counsel.

The defendant's answers to the plaintiff's interrogatories provide material and relevant information. In response to the plaintiff's Interrogatory No. 11, the defendant points out that IRS personnel who confer or negotiate on tax liability matters with taxpayers or taxpayer representatives may refer to GCM's for guidance as to the positions to take in such negotiations. Furthermore, the defendant states that the interpretation of law contained in prior GCM's are knowingly applied, distinguished, or rejected of application, as the case may be, in subsequent GCM's to insure consistency of position in the Office of Chief Counsel. This admission is made in the defendant's response to plaintiff's Interrogatory No. 7a.

Finally, the depositions of IRS personnel contain material and relevant information. Once a GCM is completed by the Office of the Chief Counsel, it is forwarded to the Office of Assistant Commissioner (Technical). The Office of Assistant Commissioner (Technical) will use the GCM as a guide as to what positions will be taken in the proposed revenue ruling, proposed private letter ruling, or proposed technical advice memorandum. According to the defendant on occasion, differences may arise between the positions of the Office of Assistant Commissioner (Technical) and the Interpretative Division of the Office of Chief Counsel. These differences are generally reconciled on an informal basis before the adoption of the revenue ruling, private letter ruling, or technical advice memorandum in question. Then a copy of the completed GCM is distributed and placed in the digest system to enable future reference. Defendant's Statement of Material Facts As To Which There Is No Genuine Issue at ¶¶ 15–20 (July 27, 1979). Thus, the government admits that differences between the GCM and ruling are resolved before the GCM is considered complete and before it becomes available for future reference.

The Court finds that GCM's are not encompassed within exemption (5) of section 552(b). GCM's contain the reasons behind the adoption of revenue rulings, private letter rulings, and technical advice memoranda. As the Supreme Court made clear in *Sears,* it is just such records that are of vital concern to the public and their release offers little chance of interfering with the decision-making process of the agency. Furthermore, GCM's are indexed and have important precedential value in determining future tax questions. Accordingly, the Court concludes that completed GCM's are not protected by the governmental privilege.

## B. AOD'S

In support of its motion for summary judgment with respect to AOD's, the defendant has filed the affidavit of Edward Everett Pigg who is the Executive Assistant to the Director of the Tax Litigation Division, Office of Chief Counsel in IRS. According to this affidavit, AOD's are legal memoranda prepared by a Chief Counsel, National Office Attorney, approved by a supervisor, and directed to the Chief Counsel. AOD's are prepared, according to Mr. Pigg, in general, whenever the government loses an issue in a tax case either in Tax Court or in a federal district court. They are prepared by the attorney responsible for review of the case at the same time he or she prepares a formal recommendation to the Department of Justice as to whether this particular case should be appealed. The affidavit states that the AOD sets

forth the issue which was decided against the government, a brief discussion of the facts and the reasoning of the attorney behind his or her recommendation that the Commissioner either acquiesce or nonacquiesce in a decision of the Tax Court or of the federal district court. According to Mr. Pigg, the AOD is reviewed within the Tax Litigation Division and after approval it is sent to the Office of the Assistant Commissioner (Technical). Finally, if the Assistant Commissioner (Technical) is not in disagreement with the recommendation to acquiesce or nonacquiesce, the AOD is printed and distributed. The IRS does not release or publish for public dissemination any opinion behind its decision to acquiesce or nonacquiesce.

AOD's are made available to IRS personnel and are cited and applied by IRS personnel in later AOD's, and TM's to promote the consistent application of the tax laws. Defendant's Answers to Interrogatories ¶¶ 6, 7C.

The Court finds that AOD's are not exempt from disclosure by section 552(b)(5). AOD's contain the reasons behind the acquiescence or nonacquiescence of the IRS in court decisions. These reasons are of vital concern to the public and their release will not harm the decision-making process of the agency.

## C. TM'S

In support of its motion for summary judgment with respect to TM's, the defendant has filed the affidavit of Robert A. Bley, the Director of the Office of the Chief Counsel, Internal Revenue Service. According to Mr. Bley, TM's are memoranda from the Commissioner of the Internal Revenue Service to the Assistant Secretary of the Treasury (Tax Policy). The Brey affidavit states that TM's are prepared by attorneys in the Legislation and Regulations Division or the Employee Plans and Exempt Organizations Division of the Office of Chief Counsel in connection with the preparation of a proposed Treasury decision. According to the affidavit, TM's are attached to a draft of a proposed Treasury decision. After consideration at several levels within the Office of Chief Counsel, a final draft of a notice of proposed rulemaking and the TM is forwarded to the Assistant Commissioner (Technical), the Chief Counsel, and the Commissioner for final approval. The approved notice of proposed rulemaking is then published in the Federal Register and written comments are solicited. After consideration of the written comments and testimony at a public hearing if one is requested, an attorney in the Legislation and Regulations Division prepares a preliminary draft of a Treasury decision and accompanying TM. Then the proposed Treasury decision and the TM are approved in the same manner as to notice of proposed rulemaking and its accompanying TM. According to the Brey affidavit, generally, a TM summarizes or explains the proposed rules, provides background information, states the issues involved, identifies any controversial legal or policy questions, discusses the approach taken by the draftsperson, and gives the reasons for the approach.

TM's are indexed, digested, and made available to IRS personnel in order to assure consistent treatment of taxpayers. Defendant's Answer to Interrogatory ¶ 6.

The Court finds that TM's are not encompassed by exemption (5). TM's explain the reasons behind the adoption of the Treasury Decision. They are used by IRS personnel in determining the tax status of taxpayers. Accordingly, they are not deliberative material.

## D. These Conclusions Are Supported By Two Recent District Court Decisions.

The conclusions of this Court with respect to the applicability of exemption (5) to GCM's, AOD's, and TM's are supported by two recent district court cases. In *Pies v. Internal Revenue Service*, 484 F.Supp. 930 (D.D.C.1979), Judge Parker ruled that a TM was not protected from mandatory disclosure by section 552(b)(5). The Court found that the facts indicate that the IRS had adopted the reasoning of the TM. *Id.* at 933. Furthermore, the Court held that "[w]here the agency has, by its own actions,

left the status of deliberative material ambiguous, but clearly has used that material in some final formal way, the Court must strike the balance in favor of public disclosure rather than recognize an exemption under FOIA." *Id.* In this case, there is no dispute that the final TM which is placed within the IRS retrieval system is used by the agency as the formal statement of the rationale behind the adoption of the Treasury decision.

In *Falcone v. Internal Revenue Service,* 479 F.Supp. 985 (E.D.Mich.1979), the Court held that a GCM was not within the protection of exemption (5). According to the Court in *Falcone,* GCM's are not protected by the deliberative privilege because they "state current agency interpretations and note where the proposed ruling may differ." *Id.* at 988.

Finally, the Court finds that the material at issue in this suit is not protected by the attorney-client privilege and does not constitute protected attorney work product. *See id.*

An order in accordance with this Memorandum Opinion shall be issued of even date herewith.